UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 10-67-GWU

MICHAEL JAMES CARRIER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Michael James Carrier, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of polysubstance abuse, allegedly in short-term remission; borderline intellectual functioning; chronic low back pain of uncertain etiology; chronic obstructive pulmonary disease due to nicotine and marijuana abuse; major depression; decreased visual acuity in the left eye; functional illiteracy; and decreased hearing. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr.

Carrier retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 19-23). The Appeals Council declined to review, and this action followed.

At the second of two administrative hearings, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently, with sitting, standing, or walking up to six hours each in an eight-hour day, and also had the following non-exertional restrictions.  He: (1) could perform no climbing of ladders, ropes, or scaffolds; (2) could occasionally climb stairs and ramps, stoop, crouch, and crawl; (3) could perform no aerobic activities such as running, jumping, or work on fast-paced assembly lines; (4) could have no exposure to concentrated dust, gases, smoke, fumes, poor ventilation, excess humidity, or extreme temperatures; (5) could have no exposure to industrial hazards or concentrated vibration; (6) could not perform work requiring binocular vision, work in low light, or work requiring literacy; (7) could not work in excessively noisy environments or where acute hearing was required for job performance; (8) required entry-level work with simple one-two-three-step procedures, no frequent changes in work routines, and no detailed or complex problem-solving, independent changing or setting of goals; and (9) should work in an object-oriented environment with only occasional interaction with coworkers,

supervisors, or the general public (with interaction defined as "meaning more than casual contact with others but [implying] coordinated activities, extended conversations, dispute resolution and so forth.") (Tr. 367).  The VE responded that there were jobs that such a person could perform, such as light commercial cleaner, laundry worker, grader/sorter/tester, and hand packer, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 37-8).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff, who was 43 years old at the time of his application, and who alleged that he attended school only through the sixth grade and in Special Education classes, alleged disability due to mild mental retardation, depression, breathing problems, low back pain, a second grade reading ability and "general overall weakness."  (Tr. 222-8).  The plaintiff has raised a large number of specific issues, and at least one of them will require a remand for further consideration.

One of the plaintiff's arguments is that the hypothetical mental factors were inadequate.  As the ALJ noted, the only mental residual functional capacity opinions for the relevant period were given by state agency psychological consultants H. Thompson Prout and Ed Ross.  (Tr. 332-34, 407-10).  Dr. Prout opined that the plaintiff's alleged limitations in memory, concentration, the ability to understand instructions, to get along socially, and to withstand stress appeared to be partially

7

credible, and based on mental factors alone, he appeared to be able to understand, remember, and sustain attention with simple, "even-paced" tasks for extended periods of two-hour segments, relate adequately in routine settings, and adapt to expected, routine task demands. (Tr. 334). Dr. Ross agreed with these conclusions without further comment. (Tr. 409).

The Sixth Circuit has held that the omission of a limitation on the plaintiff to periods of no more than two hours of concentration is reversible error. Ealy v. Commissioner of Social Security, 594 F.3d 504, 516-17 (6th Cir. 2010). As in Ealy, the restrictions found by the state agency psychological experts were uncontradicted. Therefore, under controlling precedent, the hypothetical question was inadequate and a remand will be required for further evaluation.

The plaintiff's other issues will also be addressed.

Mr. Carrier argues that the ALJ did not properly consider the Commissioner's Listings of Impairment (LOI) 2.02 and 2.04 concerning visual efficiency of his best eye. Testing from consultative examiner Dr. W.R. Stauffer showed 20/70 vision in the right eye, 20/200 vision in the left eye, and a combined 20/40 vision in both eyes without glasses. (Tr. 378). However, LOI 2.04 refers to the plaintiff's visual capacity after best correction, and the plaintiff failed to establish his visual ability with corrective lenses. Therefore, this argument is unavailing.

8

Also cited is LOI 2.08A concerning a hearing deficit. The plaintiff testified that he had a hearing aid in his right ear, and while he could not hear anything out of the ear without it, it did help him. (Tr. 33). Dr. Stauffer noted that he could hear conversational speech without difficulty. (Tr. 378). The plaintiff does not cite to any formal hearing test which would show that he met the Listing. Therefore, this argument fails.

Mr. Carrier alleges error in not considering LOI 3.02 concerning breathing limitations, despite the opinion of his treating family physician, Dr. Abdolkarim Tahanasab, that he was disabled due to asthma and chronic obstructive pulmonary disease. (Tr. 331). The Listing, however, requires a pulmonary function test showing, for an individual of Mr. Carrier's height, an FEV1 value of 1.25 liters or less. In Dr. Tahanasab's testing, the plaintiff was able to achieve 2.25 liters. (Tr. 305). Any error in failing to mention the Listing was harmless.[1]

---

[1] The plaintiff also alleges that he meets the Commissioner's Listing of Impairment 12.05C due to IQ scores below 70 obtained in a 2005 psychological evaluation, apparently obtained in a prior application for benefits. (Tr. 423). The evaluation, by Psychologist Mary Allen Genthner, also showed a second grade reading ability and a third grade arithmetic ability and she concluded that the plaintiff was functionally illiterate as well as being mildly mentally retarded. (Tr. 424-5). The ALJ rejected the IQ scores because he felt that the plaintiff's adaptive functioning was inconsistent with a diagnosis of mild mental retardation, citing the fact that he had been able to work for several years. (Tr. 19). He also discounted the scores because the plaintiff had told Genthner that he had not engaged in drug or alcohol abuse in over ten years. (Tr. 422). The psychologist specifically noted that the claimant was "conscious, alert and responsive" the day of the examination (Tr. 421), and if he was not under the influence of drugs at the time of the IQ testing, which Genthner considered valid, the ALJ's rationale for discounting his

Mr. Carrier cites the case of Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004) for the proposition that the ALJ must always give "good reasons" for dismissing a treating physician's opinion, and suggests that the ALJ failed to do so concerning Dr. Tahanasab's previously mentioned disability statement. (Tr. 331). However, the ALJ stated in his decision that he discounted Dr. Tahanasab's opinion because the physician did not mention the effects of the plaintiff's continued smoking (see, e.g., Tr. 29, 68, 377), because the pulmonary function testing performed for the physician showed a mild to moderate obstruction, and because even this testing was in conflict with other studies showing nearly normal values. (Tr. 20). In addition, the court notes that the doctor's opinion was couched in terms of a vocational conclusion outside his area of expertise. Therefore, there was no error.

The plaintiff makes somewhat related arguments concerning the ALJ's alleged failure to address conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT). He also argues that the DOT is an obsolete resource.

---

scores would appear to assume that a history of drug use is capable of permanently lowering IQ. There is no medical evidence to this effect in the record before the court. Regarding the plaintiff's adaptive functioning, the plaintiff correctly notes that the Sixth Circuit case of Brown v. Secretary of Health and Human Services, 948 F.2d 268, 270 (6th Cir. 1991) determined that such activities as possessing a driver's license, doing laundry, working as a truck driver, keeping a logbook, and making change were not inconsistent with a full scale IQ score of 68. In view of these circumstances, it would be advisable to revisit the issue of Listing 12.05C on remand.

As required by Social Security Ruling 00-4p, the ALJ asked the VE at the hearing whether there were conflicts between her testimony and the job descriptions in the DOT. She responded that her testimony was consistent, considering that it was "somewhat obsolete and doesn't [discuss] many of the issues we go with in hearings." (Tr. 39). The Sixth Circuit has held that the ruling is satisfied if an inquiry is made about conflicts. Lindsley v. Commissioner of Social Security, 560 F.3d 601, 606 (6th Cir. 2009). Regarding the plaintiff's citation of the unpublished case of Cunningham v. Astrue, 360 Fed. Appx. 606, 2010 WL 22286 (6th Cir. 2010) for the proposition that the DOT is obsolete and has been replaced by the Department of Labor with another resource, the Occupational Network or O*NET, this case turned on a "VE's dependence on the DOT listings alone." 360 Fed. Appx. at 616. The Sixth Circuit has held in precedential decisions that an ALJ may reasonably rely on a VE's testimony based on experience, even where it is in conflict with the DOT. Conn v. Secretary of Health and Human Services, 51 F.3d 607, 610 (6th Cir. 1995); 20 C.F.R. § 404.1566(e). Moreover, the plaintiff does not specify any particular information from the O*NET which would contradict the VE's testimony.

     Finally, the plaintiff cites the ALJ's statement that he intended to rely on the restrictions of the consultative physical examiner, Dr. Stauffer, but left out several factors named by the physician, such as an inability to tolerate even moderate exposure to respiratory irritants, an inability to kneel, and an inability to repetitively

11

push and pull.  (Tr. 21, 380).  The Commissioner points out that the DOT does not indicate that any of the jobs cited by the VE would require kneeling.  Moreover, it appears that any limitation on work around pulmonary irritants was largely gratuitous in light of the plaintiff's continued smoking.  See <u>Sias v. Secretary of Health and Human Services</u>, 861 F.2d 475, 480 (6th Cir. 1988).  The DOT does not specifically mention pushing and pulling, but this is a matter that can be addressed on remand.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 12th day of July, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**